**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:13-cv-02385-WYD-MEH

MALIBU MEDIA, LLC,
    Plaintiff
v.

MIKE CUDDY,
    Defendant.

___

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND INCORPORATED MEMORANDUM OF LAW AND <u>UNOPPOSED</u> REQUEST FOR ENTRY OF PROTECTIVE ORDER**
___

  Defendant Mike Cuddy ("Defendant") hereby submits his Response in Opposition to Plaintiff's Motion to Compel and Incorporated Memorandum of Law and <u>Unopposed</u> Request for Entry of Protective Order.

**SUMMARY OF OPPOSITION AND REQUEST FOR PROTECTIVE ORDER**

  Plaintiff seeks a mirror image, or a forensic duplicate of Defendant's hard drives, which replicates "bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive." *Communications Ctr., Inc. v. Hewitt*, 2005 U.S. Dist. LEXIS 10891 at *4 (E.D. Cal. April 5, 2005). Defendant's hard drives contain personal, confidential, and irrelevant information, and the cost to produce a forensically sound mirror image is expensive. To prevent undue intrusiveness and protect privacy, many courts are reluctant to compel forensic imaging, or if compelled, the imaging and examination must be subject to a specific Protective Order ("PO"). Plaintiff agrees a PO must be in place; however, both of the proposed POs offered by Plaintiff create a significant burden and cost to Defendant. While the proposed PO attached to Plaintiff's Motion appears to contain terms limiting the intrusiveness of the search, it

also contains a "catch-all" statement that effectively negates any actual limitations: "Plaintiff's forensic expert may conduct ***any other actions that may be necessary*** to determine if significant alterations have been made to the hard drives consistent with the deletion or suppression of evidence." (emphasis added). In contrast, the proposed PO offered by Defendant allows a search for the only relevant items at issue − Plaintiff's copyrighted Works, and deletions/alterations/removal of those Works. *See* **Exhibit A**, attached hereto. Defendant's position is substantially justified, as Plaintiff agrees a PO should be put in place. No award of fees or costs for Plaintiff's filing this Motion is warranted.

## FACTUAL BACKGROUND

On 9/3/13, Plaintiff filed a Complaint against IP address 71.237.22.86. Plaintiff moved this Court and was permitted to serve a Subpoena on Comcast to obtain identifying information for the above IP address. Plaintiff perfected service of the Subpoena on Comcast on 9/11/13, which would have yielded the IP history from March 2013 until September 2013.[1] Plaintiff alleges that Defendant downloaded twenty of its Works from 7/19/13 through 8/3/13. Plaintiff only asked Comcast to provide identifying information for the referenced IP address on 8/3/13 at 16:54:06.[2]

On 12/16/13, Plaintiff filed the Amended Complaint against Defendant. Defendant responded to Plaintiff's written discovery on 4/2/14 (not 3/21/14 as stated in Plaintiff's Motion),

---

[1] It is generally understood that Comcast maintains information on IP address history for 180 days. As such, a request on September 11, 2013 would have yielded history for the IP address in question from mid-March 2013 until September 11, 2013, covering all 20 of the Works allegedly downloaded by the IP address at issue.

[2] Plaintiff only has evidence that Defendant was assigned the referenced IP address for the timeframe of one of its Works allegedly being downloaded. While Defendant does not concede that Comcast's information is correct, Plaintiff's request for a complete copy of all Defendant's hard drives is more obtrusive and overreaching in light of the fact that it should only be looking for one of its Works, for one second in time, as that is all it could prove if trial were to occur today.

and it was not until 6/27/14 that Plaintiff followed up on the Responses to written discovery, and provided a proposed PO ("6/27/14 Proposed PO"). In Defendant's response to the written discovery, he objected to the production of the hard drives in their entirety without a PO in place, and also proposed a neutral perform the searches:

> General Objection: 3. Defendant objects to Plaintiff's multiple broad and unlimited requests for copies of Defendant's entire hard drive, any backup, copy or alternative form of Defendant's hard drive. Plaintiff is entitled to request some type of discrete, limited search be performed by a neutral forensic computer expert or investigator. A protective order must be in place prior to this neutral being provided access to Defendant's entire hard drive, as Defendant's hard drive contains personal, private, financial, and other information which has no relevance to the allegations made by Plaintiff in this case. Defendant is willing to consider Plaintiff's proposal to accomplish a limited search.
>
> 1. A forensically sound copy (a clone) of the hard drive for each of the Computer Devices in your house, apartment or dwelling.
>
> **OBJECTION:** This RFP calls for production of personal information, including financial information, that is irrelevant, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Production of electronically stored information ("ESI") is also expensive. Defendant will consider a reasonable proposal by Plaintiff for some type of limited neutral forensic inspection, whereby Plaintiff will not search or obtain an actual copy of Defendant's hard drive, but rather a neutral party will conduct an inspection with agreed upon parameters, all subject to a protective order. This RFP also seeks information that is so broad and unlimited in time and scope, its purpose is only to intimidate, annoy, and harass Defendant.

The 6/27/14 Proposed PO required Defendant to designate material from all of his hard drives as "Confidential," "Confidential – Attorney's Eyes Only," or "Confidential – Outside Attorney's Eyes Only." *See* **Exhibit B**, attached hereto. This would have been an extremely time consuming, expensive, and overly burdensome task. Further, the 6/27/14 Proposed PO failed to address the proposal for a "discrete, limited search" by a neutral.

After receipt of the 6/27/14 email with Proposed PO from Plaintiff, counsel for both parties went back and forth in multiple emails attempting to come to an agreement about the parameters of a PO to allow for imaging and inspection of the hard drives. In a 7/7/14 email, undersigned counsel requested Plaintiff provide the following:

> a step by step protocol for both the imaging and then analysis phases. Please include the programs and software that your experts intend to use to perform the imaging and analysis so that we can analyze exactly what access you are proposing your experts will have to view everything contained on my client's hard drives.

*See* **Exhibit C**, attached hereto. Plaintiff provided information about the software programs for the imaging and investigation, but did not include a "step by step protocol." In a 7/16/14 email, Plaintiff again requested comment on the 6/27/14 Proposed PO, but offered no "step by step protocol." On that same date, undersigned asked again for "a specific proposal for the inspection parameters, the actual search terms your forensic expert would be using?" Later that day, Plaintiff's counsel referred back to the 6/27/14 Proposed PO, but provided additional specific information on (1) imaging v. only searching the hard drives; (2) some specific limitations on the examination of the imaged hard drives; and (3) information on Mr. Seifert, Plaintiff's proposed imaging expert.

Based on the information provided, Defendant agreed and informed Plaintiff that the hard drives had to be imaged prior to any searches being conducted. Undersigned proposed on 7/22/14 that the parties agree on a neutral, at Plaintiff's cost, to image the hard drives and hold them until the parties could sort out the remaining disputes. Undersigned also again expressed the following concern:

> We remain extremely concerned about turning over the entirety of the contents of my client's devices to your client, and especially to Mr. Paige,[3] given the volume of irrelevant material on my client's devices having nothing to do with your client's allegations against him.

See **Exhibit D**, attached hereto.

Plaintiff's email of 8/7/14, addressing the 7/22/14 concerns, attached a revised Proposed PO ("8/7/14 Proposed PO"). The 8/7/14 Proposed PO contained Plaintiff's proposed search terms for the evaluation phase. Plaintiff emphasized the need to search for any evidence of BitTorrent or peer-to-peer file sharing use, although the presence of BitTorrent alone proves nothing. Plaintiff also noted his expert Mr. Paige informed him "a proper examination can take several weeks."

On 8/25/14 undersigned provided a redlined version of the 8/7/14 Proposed PO. On 8/28/14 Plaintiff's counsel indicated he could not agree to the primary issues, and therefore the parties would need to address their issues with the Court.

Specifically, the parties seek this Court's guidance on several issues:

(1)   whether a neutral forensic expert should image and then perform the investigation subject to a PO;
(2)   whether Plaintiff should pay for a neutral forensic expert to image and search the entire hard drives; and,
(3)   what the specific parameters of the searches should be.

While the parties attempted to agree on the parameters of a PO, they are clearly at an impasse, and need this Court's assistance. Because Defendant's objections to Plaintiff's position are substantially justified, sanctions are not warranted.

---

[3] Plaintiff's retained expert, who is on retainer with Plaintiff, and apparently their expert in every case throughout the United States, is alleged to have been involved in criminal actions involving purchase of illegal drugs. As such, not only is his credibility in question, his potential bias in "helping" Plaintiff in these cases is of concern.

## LEGAL STANDARD

Fed. R. Civ. P. 26(b)(1) sets forth the scope and limitations of permissible discovery. *King v. Solvay S.A.*, 2014 U.S. Dist. LEXIS 120284 (D. Colo. Aug. 28, 2014). Parties may obtain discovery regarding any matter, **not privileged**, that is relevant to the claim or defense of any party. (emphasis added). *Id.* As to the discovery of electronically stored information, Fed. R. Civ. P. 34(a) provides that, "A party may serve on any other party a request within the scope of Rule 26(b) to produce and permit the requesting party or its representative to inspect, copy, test, or sample any... electronically stored information..." Fed. R. Civ. P. 34(a)(1)(A). "This right to information, however, is counterbalanced by a responding party's confidentiality or privacy interests. A party is therefore not entitled to a routine right of direct access to a party's electronic information system." *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 446 (D. Conn. 2010) (citing Notes of Advisory Committee on 2006 Amendments; internal quotations omitted); *see also Covad Communications Company v. Revonet, Inc.,* 258 F.R.D 5, 12 (D.D.C.2009) (advisory committee note to Rule 24 cautions against making forensic examination the default, however, and encourages courts to "guard against undue intrusiveness.").

Plaintiff seeks a forensically sound image of all of Defendant's hard drives. A forensic image, or "mirror image," of a hard drive "'replicates bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive.'" *Balboa Threadworks, Inc. v. Stucky*, 2006 U.S. Dist. LEXIS 29265 at *7 (D. Kan. Mar. 24, 2006) (quoting *Communications Ctr., Inc. v. Hewitt,* 2005 U.S. Dist. LEXIS 10891 at *3 (E.D. Cal. Apr. 5. 2005). *See also Ferron v. Search Cactus, L.L.C.*, 2008 U.S. Dist. LEXIS 34599 at *10, fn. 5, 2 (S.D. Ohio Apr. 28, 2008) ("A mirror image copy represents a snapshot of the computer's

records. * * * It contains all the information in the computer, including embedded, residual, and deleted data."). Generally, courts are reluctant to compel forensic imaging, largely due to the risk that the imaging will improperly expose privileged and confidential material contained on the hard drive. Because allowing direct access to a responding party's electronic information system raises issues of privacy and confidentiality, courts must guard against undue intrusiveness. *Scotts Co. LLC v. Liberty Mut. Ins. Co*., 2007 U.S. Dist. LEXIS 43005 at *9 (S.D. Ohio June 12, 2007). *See also Capitol Records, Inc. v. Alaujan,* 2009 U.S. Dist. LEXIS 110626 (D. Mass. May 6, 2009) (holding that "the principal issue" in forensic imaging cases centers "on concerns for defendants' privacy"). Before compelling forensic imaging, a court must weigh "the significant privacy and confidentiality concerns" inherent in imaging against the utility or necessity of the imaging. *John B. v. Goetz*, 531 F.3d 448, 460 (C.A.6, 2008); *Covad Communications Co. v. Revonet, Inc*., 258 F.R.D. 5, 11 (D.D.C. 2009).

Pursuant to Fed. R. Civ. P. 26(c)(1), a party from whom discovery is sought may move for a protective order, seeking an order to protect the party from annoyance, embarrassment, oppression, or undue burden or expense, including: (1) specifying terms, including time and place, for the disclosure or discovery; (2) prescribing a discovery method other than the one selected by the party seeking discovery; (3) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; and (4) designating the persons who may be present while the discovery is conducted. It is within the Court's discretion to issue a protective order. *Sladek v. Bank of Am., N.A.,* 2014 U.S. Dist. LEXIS 85643 (D. Colo. June 24, 2014).

While the parties disagree on the terms of production of the hard drives, there is no disagreement that Plaintiff is entitled to discrete, limited information contained on those hard drives. The parties agree a PO must be in place, but disagree on the specific terms of that PO. As such, Plaintiff's request for fees and costs from Defendant for bringing this Motion should be denied pursuant to Fed. R. Civ. P. 37(a)(5)(A):

> But the Court must not order this payment [of attorney's fees and expenses] if:
> (ii)   the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii)  other circumstances make an award of expenses unjust.

Defendant respectfully requests that the Court issue a PO, and deny Plaintiff's request for sanctions.

### ARGUMENT- DEFENDANT'S PROPOSED PO CONTAINS SPECIFIC SEARCH PARAMETERS THAT ARE REASONABLE, RELATED TO THE ALLEGATIONS AT ISSUE IN THIS CASE, AND NOT UNDULY BURDENSOME, INTRUSIVE, OR COST PROHIBITIVE

### I.   DEFENDANT'S PROPOSED PO IS REASONABLE AND ADDRESSES THE ALLEGATIONS MADE BY PLAINTIFF

Defendant proposes that a neutral forensic expert perform a search initially for the copyrighted Works alleged to be downloaded by Defendant. If they are found, there is no need for subsequent searches. Data evidencing the presence of the Works would be provided to both sides, for production to their respective consultants to analyze. Plaintiff will not agree to this. Plaintiff rejected it as too prohibitive, yet what exactly does Plaintiff want? It appears Plaintiff wants open access to every single bit of personal, confidential, irrelevant information on Defendant's hard drives to perform a fishing expedition.

Defendant proposed a second step whereby if the Works are not located a neutral forensic expert would search for evidence of potential destruction, removal, scrubbing, or deletion of the

8

Works.  Plaintiff will not agree to this either.  If there is no such evidence, why does Plaintiff need to go further?   Plaintiff seems to provide the basis – albeit a fishing expedition – in the following from its Motion:

> Indeed, in Plaintiff's other copyright cases, Plaintiff has discovered the use of BitTorrent clients, torrent files and fragments, and evidence of the existence of other relevant non-disclosed hard drives.  All of the foregoing is highly relevant evidence demonstrating that a defendant likely committed the infringement or concealed evidence.  Therefore, exclusion of such discovery is unreasonable and improper.
>
> Plaintiff seeks this information in order to examine the contents of the hard drives for Plaintiff's works, evidence of BitTorrent use, and evidence of spoliation, deletions, or suppression of evidence.  In Plaintiff's prior cases, it has found evidence of frequent BitTorrent use, spoliation, suppression of evidence, and perjury.  Thus, there is a strong likelihood that Plaintiff will find relevant evidence on Defendant's hard drives.

In rejecting the proposed steps suggested by Defendant, although they are two of the same steps in Plaintiff's own proposed examination, Plaintiff simply cites to "other copyright cases" generically.  Plaintiff believes that even if there is no evidence of Plaintiff's Works present, and no evidence of potential spoliation/destruction, etc., it should still be entitled to keep searching without limitation.  The presence of BitTorrent clients, torrent files and fragments alone proves absolutely nothing in its claims against Defendant.  Plaintiff's failure to agree to any of the terms proposed by Defendant shows that all it seeks with its discovery request is to perform a fishing expedition, which should be denied.

## II.  PLAINTIFF IS NOT PERMITTED TO USE ITS BROAD ELECTRONIC DISCOVERY REQUEST TO CONDUCT A FISHING EXPEDITION INTO DEFENDANT'S PERSONAL, PRIVATE, AND CONFIDENTIAL MATTERS

Courts are concerned with unlimited "fishing expeditions when it comes to computer forensics."  *News Am. Mktg. In-Store Servs. v. Floorgraphics, Inc.*, 2012 U.S. Dist. LEXIS

9

76543 at *8-9 (D.N.J. May 30, 2012) (court is wary of the use of broad and ambiguous electronic discovery requests as a litigation tactic or as a "fishing expedition"); s*ee also Bakhit v. Safety Marking, Inc*., 2014 U.S. Dist. LEXIS 86761, at *7-8 (D. Conn. June 26, 2014) (due to concern for privacy interests and the overbroad scope of the requested search, forensic request of cell phones dismissed without prejudice).

Plaintiff relies on *Capitol Records, Inc. v. Alaujan*, 2009 WL 1292977 at *1 (D. Mass., 2009) in support of its request to image and examine Defendant's hard drives. The Honorable Judge Gertner specifically noted the Court's concerns "for defendants' privacy, especially where 'the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature.'" As in the present case, Plaintiff seeks to image all of Defendant's hard drives to conduct a fishing expedition to look for much more than its own Works. In *Capitol Records*, the Court ordered discovery only subject to a PO. *Id.* (court is mindful of the potential exposure of non-relevant personal information occasioned by mirror-imaging); *Commercial Law Corp., P.C. v. FDIC*, 2012 U.S. Dist. LEXIS 51437, at *9-10 (E.D. Mich. Apr. 12, 2012) (parties to follow a strict and detailed plan to ensure that Plaintiff's privileged information is protected).

### III. DEFENDANT'S REQUEST FOR A NEUTRAL TO IMAGE AND EXAMINE THE HARD DRIVES IS REASONABLE, AND PROTECTS DEFENDANT'S PRIVACY INTERESTS

Numerous courts support the protection of the parties either agreeing on an expert or having a court-appointed one to perform imaging and examination. *See Maxtena, Inc. v. Marks*, 2014 U.S. Dist. LEXIS 121770, at *41-42 (D. Md. 2014) (parties selected neutral computer forensic examiner and agreed upon search protocols); *EarthCam, Inc. v. OxBlue Corp*., 2013

U.S. Dist. LEXIS 55215 (N.D. Ga. Apr. 17, 2013) (computer forensic expert agreed upon by parties); *Krumwiede v. Brighton Assocs., L.L.C.*, 2006 U.S. Dist. LEXIS 31669 (N.D. Ill. May 8, 2006) (computer to be placed in custody of neutral expert); *Sony BMG Music Entm't v. Arellanes*, 2006 U.S. Dist. LEXIS 78399, at *4-5 (E.D. Tex. Oct. 27, 2006) (parties to submit to court an agreed upon forensics examiner, costs to be borne by initial requester, and neutral will provide a report to parties and the court). In fact Your Honor agreed with this premise in *EEOC v. Original Honeybaked Ham Co.,* 2012 U.S. Dist. LEXIS 160285, at *9-10 (D. Colo. Nov. 7, 2012). Magistrate Judge Michael Hegarty appointed a special master to review information from cell phones, social media websites, and email accounts/blogs/etc. *Id.,* at *7-8. The parties were to collaborate on the instructions for the special master regarding the parameters of the collectable information. *Id.,* at *8. The Court would then review the special master's findings and turn over to defendant and plaintiff only what the Court found legally relevant. *Id.,* at 9. Plaintiff would then do a privilege review with the opportunity to object to what the Court found as relevant. *Id.*

In order to protect the defendant, courts have outlined a protection order that included the following process: (1) the neutral expert would image the hard drive and give a listing of the contents to the defendant; (2) the defendant and defendant's counsel review the list and state privileged information; (3) the plaintiff only receives notice that defendant has received the report; and (4) only the redacted mirror image is then turned over to plaintiff's counsel for plaintiff's review. *See EyePartner, Inc. v. Kor Media Group LLC*, 2013 U.S. Dist. LEXIS 98370, at *21-22 (S.D. Fla. July 15, 2013); *Genworth Fin. Wealth Mgmt. v. McMullan*, 267 F.R.D. 443, 449 (D. Conn. 2010); *Am. Family Mut. Ins. Co. v. Gustafson*, 2009 U.S. Dist.

11

LEXIS 22685, at *6-8 (D. Colo. Mar. 10, 2009). It is assumed that Defendant would then have to utilize a forensic computer expert to sort through the listing to locate the presence of the Works, or metadata or information evidencing the deletion of the Works, as well as to sort through all of the remainder of the contents. As such, while this would protect Defendant's privacy and confidential interests, it would cost him several thousand dollars to complete a review of the hard drives' contents. The use of a neutral to image and then gather the relevant data for both parties would not only protect Defendant's privacy interests, but also be the most economical given the significant cost to image and search.

## IV. PLAINTIFF SHOULD BEAR THE COST OF THE IMAGING AND EXAMINATION BY A NEUTRAL TO PREVENT PREJUDICE TO DEFENDANT

Plaintiff produces and distributes pornographic movies. It has been estimated that Plaintiff has obtained at least $6.8 million in the last four years in settlement of copyright infringement claims such as the present one against Defendant.[4] In addition, Plaintiff collects revenue through its subscription based website – X-art.com. It is believed that Plaintiff collects $24.95 per month or $100 per year from its subscribers to view its pornographic movies. Plaintiff's representative Collette Pellessier Field testified in 2013 that they had approximately 50,000 subscribers. As such, in addition to settlement income from copyright infringement suits, Plaintiff receives millions of dollars of income from its subscribers. Defendant on the other hand is a 70 year old retired airline pilot. Plaintiff is clearly in a better financial position than Defendant to bear the significant costs for forensic imaging and investigation.

---

[4] *See* Professor Matthew Sag, Loyola University Chicago School of Law and Associate Director for Intellectual Property of the Institute for Consumer Antitrust Studies, *Copyright Trolling, An Empirical Study*, (May 14, 2014). Defendant has not independently verified Professor Sag's data.

Regardless of the disparity in finances between the parties, the cost for imaging should be borne by the requester. *Am. Family Mut. Ins. Co. v. Gustafson*, 2009 U.S. Dist. LEXIS 22685, at *6-8 (D. Colo. Mar. 10, 2009); *see also Sony BMG Music Entm't*, 2006 U.S. Dist. LEXIS 78399, at *4-5. Fed. R. Civ. P. 26(g) imposes concomitant obligations on the parties serving and responding to discovery requests. *See* Fed. R. Civ. P. 26(g). By signing a discovery request, response or objection, counsel of record is certifying that "to the best of [their] knowledge, information and belief formed after a reasonable inquiry," the request, response or objection is consistent with the Federal Rules of Civil Procedure and existing law, is not interposed for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation), and is neither unreasonable nor unduly burdensome, considering the needs of the case, the amount in controversy, or the significance of the issues at stake in the litigation. *See* Fed. R. Civ. P. 26(g)(1)(B).

Counsel does not satisfy their obligations under Rule 26(g) by robotically recycling discovery requests propounded in earlier actions. *Bottoms v. Liberty Life Assur. Co*., 2011 U.S. Dist. LEXIS 143251 (D. Colo. Dec. 13, 2011). Indeed, that approach to discovery would be antithetical to the "stop and think" mandate underlying Rule 26(g). *Id. citing Cf. Robbins v. Camden City Board of Education*, 105 F.R.D. 49, 56-57 (D. N.J. 1985).

Further, courts are obligated to prohibit discovery which will subject the producing party to undue financial expense. *See* 1993 Advisory Committee Notes to Fed. R. Civ. P. 30(a)(2)(A) (recognizing that counsel have a professional responsibility to pursue discovery in a cost-effective way). *BBVA Compass Ins. Agency, Inc. v. Olson*, 2010 U.S. Dist. LEXIS 111633, at *3-5 (D. Colo. Oct. 12, 2010). A court has the discretion to tailor discovery to the circumstances

of the case at hand, to adjust the timing of discovery, and apportion costs and burdens in a way that is fair and reasonable. *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 U.S. Dist. LEXIS 17857, at *28-29 (D. Colo. Feb. 8, 2010) (*citing Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 42 (D. Md. 2000)). It appears that Plaintiff agrees it should pay to image, but only if it gets to select who performs the work. This creates an undue burden and prejudices Defendant, who is forced to agree to their selected experts, or spend thousands of dollars for this discovery.[5] While the $2,400 to $4,000 cited by Plaintiff in its Motion is insignificant to a corporate entity who allegedly makes millions of dollars a year in its pornography business, it is quite significant to Defendant.

## CONCLUSION

Defendant respectfully requests that this Court deny Plaintiff's Motion to Compel. Defendant also requests that the Court deny Plaintiff's request for sanctions, including attorney's fees and costs.

Defendant further respectfully requests that the Court enter a Protective Order. Defendant has attached his Proposed PO as provided to Plaintiff, which includes the following items:

(1) the parties agree on a neutral forensic expert to image and examine Defendant's hard drives;

(2) the neutral forensic expert conducts the searches of Defendant's imaged hard drives only within the parameters set forth in the PO; and

---

[5] Plaintiff's Motion notes the significant cost to image the hard drives, estimating anywhere from $2,400 to $4,000. Undersigned has spoken to several forensic consultants who have indicated a cost of anywhere from $2,500 to $9,750 to image and examine all of Defendant's hard drives.

(3)     Plaintiff pays the cost for the neutral forensic expert to image and examine Defendant's hard drives.

WHEREFORE, Defendant respectfully requests that this Court enter the proposed PO submitted by Defendant hereto as Exhibit A; Order Plaintiff to pay the cost associated with the imaging and examination; and DENY Plaintiff's Motion to Compel, including Plaintiff's request for sanctions.

Dated this 9th day of September 2014.

                                          GODIN & BAITY, LLC

                                          By     *s/ Carolyn S. Lindvig*
                                                Carolyn S. Lindvig
                                                621 Seventeenth Street, Suite 1900
                                                Denver, CO 80265
                                                (303)572-3100
                                                clindvig@godinbaity.com

                                          *Attorneys for Defendant Mike Cuddy*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September 2014 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Jason Kotzker
Kotzker Law Group
9609 South University Boulevard, #632134
Highlands Ranch, CO  80163

*/s/*
_____
Diane T. Lee