**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:13-cv-02385-WYD-MEH

MALIBU MEDIA, LLC,
         Plaintiff
v.

MIKE CUDDY,
         Defendant.

---

**DEFENDANT'S COMBINED (1) RESPONSE IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO COMPEL AND INCORPORATED MEMORANDUM OF LAW [CM/ECF 60]; (2) RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF A PROTECTIVE ORDER REGARDING PRODUCTION OF DEFENDANT'S HARD DRIVES [CM/ECF 61]; AND (3) MOTION FOR ENTRY OF PROTECTIVE ORDER ATTACHED HERETO AS EXHIBIT A**

---

Defendant Mike Cuddy ("Defendant"), through undersigned counsel, hereby submits his Opposition in Response in Plaintiff's Renewed Motion to Compel [CM/ECF 60], and Plaintiff's Motion for Entry of Protective Order, and Motion for Entry of Protective Order attached hereto as **Exhibit A.**

**INTRODUCTION**

This Court acknowledged that the protection of Defendant's privacy rights outweighed Plaintiff's "ability to have full access to everything that [Defendant's] ever done on their --- on their personal computer……I just can't imagine a rule that gives somebody open access to all the files on someone's computer just because there's an allegation of a download." **[Ex. B, 10/14/14 Trans. Excerpt, p. 6]**. Defendant proposed Plaintiff's expert not view the contents of the hard drives, use specific search terms, and produce a list of the files containing those search terms. After Defendant's privilege and relevance review, and production of a privilege log, Plaintiff would view the remaining file contents. This is the least intrusive means of obtaining the

permitted information, and is frankly the only way to prevent the intrusiveness of the fishing expedition sought by Plaintiff.

## FACTUAL BACKGROUND

It was not until well after September 11, 2014 that the parties truly attempted to work out the terms of a Protective Order ("PO"), following the direction provided by the Court during the September 11 hearing, including:

-the protective order needs to be in place before any of this [imaging or searching] is done. **[Ex. C, 9/11/14 Trans. Excerpt, p. 9]**.

-Well, you know, are you planning on having the defendant being apprised of everything you're doing. **[Ex. C, 9/11/14 Trans. Excerpt, p. 9]**. (To which Mr. Kotzker responded "Absolutely." *Id.*)

-But if you didn't want to pay for that amount of time to look over his shoulder then what should happen is he keeps a detailed accounting of every act he engages in. Every keystroke he enters. Okay? So that you can duplicate and follow exactly what he did. And he certifies that under oath. **[Ex. C, 9/11/14 Trans. Excerpt, pp. 12-13]**.

-So, simply because the defendant is being a nice guy and offering up, without a fight, parts of his computer I don't want that to mean that suddenly everything is open. **[Ex. C, 9/11/14 Trans. Excerpt, p. 16]**.

The Court ordered production of Defendant's hard drives for **limited** searching purposes, **but only after a Protective Order was in place.** [CM/ECF 50]. The Court further advised: "If any disputes come up you know you can just call immediately on the phone and I will – you know, because this is truly so intrusive that I need to keep very close control over it." **[Ex. C, 9/11/14 Trans. Excerpt, pp. 19-20]**.

Over two weeks later, on September 29, 2014, Plaintiff sent a draft PO. Defendant sought "a detailed accounting of every act" Plaintiff's expert, Patrick Paige, was to engage in in performing his searches. Plaintiff has used Mr. Paige for years to support its copyright

2

infringement litigation, so based on his prior searches in similar cases, it should have been easy for Mr. Paige to provide an accounting, but Plaintiff refused. Defendant provided a redlined PO to Plaintiff on October 13, 2014. Defendant was attempting to protect Defendant's interests by understanding what Mr. Paige was going to do in advance, to verify with Defendant's forensic consultant what Mr. Paige would be able to access when he searched as he was proposing. Defendant would then know whether Mr. Paige was viewing more than he was permitted to see.

During a status conference with the Court on October 14, 2014, Plaintiff's counsel represented that the parties were working together on the PO, but asked for expanded search parameters, including investigating whether other computers were connected to the computers turned over, or other hard drives connected to those computers. Plaintiff had failed to raise those issues previously, and the Court declined the request:

> So if you do come across that kind of information where the defendant testifies in some way that you believe is suspicious or lacks credibility, then that might provide the basis for **another search**. Now, I know it's expensive to keep doing that, but, in all honesty, **we have to protect privacy rights here**, and so sometimes this is just going to have to be **done incrementally** because the **interest that somebody has in their computer simply outweighs your ability to have full access to everything** that they've ever done on their – personal computer….I just can't imagine a rule that gives somebody open access to all the files on someone's computer just because there's an allegation of a download."

**[Ex. B, 10/14/14 Trans. Excerpt, p. 6 (emphasis added)]**.

In an October 22, 2014 email, Mr. Kotzker sought to expand the search parameters. He refused to provide any of the steps that Mr. Paige would perform in his searching. **[Ex. D, 10/22/14 emails]**. Instead, on the deadline for Plaintiff to serve its Expert Disclosures, Mr. Kotzker conferred regarding another requested extension to provide expert disclosures, and also noted a newfound urgency to image the hard drives, and specifically stated "we can create an agreement between the parties that allows Mr. Siefert to only image the drive and to retain

custody of the images until the parties or the court resolve the PO issue." **[Ex. E, 10/28/14 Emails]**. Creating a PO for imaging only in order to move forward with that step was reasonable, especially in light of the Court's specific direction that a PO needed to be in place before imaging or searching was done, and that "anybody that touches [the hard drives] has to sign a paper that says, I acknowledge that I'm only allowed to do this and this. That's a court order, and if I exceed the parameters then I can potentially be held in contempt of court with civil and criminal penalties," **[Ex. C, 9/11/14 Trans. Excerpt, p. 10]**. By November 19, 2014, Mr. Kotzker backtracked and said such agreement was not appropriate or necessary. **[Ex. F, 11/19/14 Emails]**. He then instructed undersigned counsel to draft one, and accused her of purposefully dragging this PO out as long as possible. *Id.* Undersigned reminded Mr. Kotzker that he originally offered to draft something, and the Court had also indicated nothing would happen until the PO was resolved. **[Ex. G, 11/19/14 Emails]**. Undersigned again requested that Mr. Kotzker review her redlined PO from October 13, 2014 and answer her questions "so that at the very least we will have agreed upon the terms of the PO related to the Works and destruction/removal/etc. of the Works." *Id.*

On December 9, 2014, undersigned provided a PO for imaging only since Mr. Kotzker refused to do so, specifically noting "[p]lease let me know if you have any changes so that we may provide to Judge Hegarty tomorrow, for his signature, in order to get the hard drives imaged." **[Ex. H, 12/9/14 Emails]**. Mr. Kotzker made changes. Counsel continued to converse about the terms to be included in the PO to cover Mr. Paige's analysis work, and undersigned stated "I am working on a draft PO for searching. I need your specific list of 'any variations thereof' to the exact titles of the Works your expert proposes searching so I can run them by my

4

expert. I need your specific list of search terms for wiping efforts, for example, each wiping program, or what words he would use to search as well." **[Ex. I, 12/9/14 Emails]**.

A hearing on Plaintiff's 4th Motion for Extension to Serve Expert Reports was held on December 10, 2014. At that time, Plaintiff's counsel represented that the parties were close to an agreement on a PO to address just the imaging of the hard drives. From December 10-17, 2014 both parties spent a great deal of time working on the PO. It became clear what disputes remained, and on December 17, 2014, Plaintiff indicated an intention to file this Renewed Motion to Compel. Undersigned objected as the Court had previously invited the parties to contact the Court via telephone to resolve issues, and further indicated:

> It's disappointing that you won't consider making some of my requested modifications. We are not going round and round but making progress, which the Court would appreciate. There is no reason to file a motion to compel. My client is able to turn over his hard drives as soon as we have the PO finalized. So I absolutely object to a renewed motion to compel, as it is a waste of time and money. I agree that we need to have the Court address remaining issues with the PO though. I object to entry of your PO but absolutely agree we need a PO. Your unwillingness to work through the remaining issues is unreasonable given the progress we have made.

**[Ex. J, 12/17/14 Email.]**

In response, Plaintiff's counsel blamed undersigned counsel's "deep rooted misunderstanding of what a forensic analysis of a computer hard drive really is" as the reason a PO was not in place. **[Ex. K, 12/18/14 Emails]**. Condescending remarks aside, Defendant is entitled to be protected from the invasiveness of Plaintiff's proposed PO, as this Court has recognized that such protection is mandatory and necessary.

Further, while Plaintiff accuses Defendant of making unreasonable demands and delay, it is Plaintiff who has delayed in this matter. Plaintiff has refused at multiple steps to agree to procedures that would have, by now, allowed Plaintiff to have secured its forensic duplicates of

all of the hard drives. Allowing Plaintiff to search as it chooses, and to view everything amounts to absolutely no privacy protection for Defendant. The proposed method for searching provided by Defendant protects his privacy interests, but also permits Plaintiff to access what it needs to verify whether Defendant's hard drives contain the Works, or removal of the Works. As undersigned indicated to Mr. Kotzker, the parties had clear disagreements which she believed the parties would jointly bring to the Court to decide. Instead, Mr. Kotzker filed two separate Motions, requiring responses, and further delay in moving forward with this matter.

### RESPONSE IN OPPOSITION AND MOTION FOR ENTRY OF DEFENDANT'S PROTECTIVE ORDER

As to the discovery of electronically stored information, Fed. R. Civ. P. 34(a) provides that, "A party may serve on any other party a request…to produce and permit the requesting party or its representative to inspect, copy, test, or sample any...electronically stored information..." Fed. R. Civ. P. 34(a)(1)(A). "This right to information, however, is counterbalanced by a responding party's confidentiality or privacy interests. A party is therefore not entitled to a routine right of direct access to a party's electronic information system." *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 446 (D. Conn. 2010).

Plaintiff seeks a mirror image, or a forensic duplicate of Defendant's hard drives, which replicates "bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive." *Communications Ctr., Inc. v. Hewitt*, 2005 U.S. Dist. LEXIS 10891 at *4 (E.D. Cal. April 5, 2005). Defendant's hard drives contain personal, confidential, and irrelevant information. During the September 11, 2014 hearing, the Court granted Plaintiff's

prior Motion to Compel, limited to allowing it to search for the Works and removal thereof.[1] The parties were instructed to draft a PO to prevent undue intrusiveness and protect Defendant's privacy. In spite of what Malibu's counsel represents in his motions, it was not until after September 11, 2014 that the parties truly attempted to work out the terms of a suitable protective order.

The fundamental disagreement is as follows: (1) Plaintiff disagrees that "search terms" or keyword or phrase searches are proper; (2) because it might take some time, Defendant should waive his rights to assert attorney-client privilege, work product protections, relevancy objections, and a number of other objections he would be entitled to if the contents of his hard drive were somehow viewable as hard copy documents; and (3) Plaintiff refuses to require his expert to create a log – in direct contradiction to what the Court stated on the record during the September 11, 2014 hearing—so that Defendant can duplicate all searching efforts. What all of these disagreements amount to is not caused by, as alleged by Plaintiff: Defendant's and undersigned counsel's "deep rooted misunderstanding of what a forensic analysis of a computer hard drive really is." **[Ex. K, 12/18/14 Emails]**. Instead, these disagreements amount to Plaintiff's ongoing attempt to conduct the fishing expedition they have asked for from the beginning. Defendant requests this Court enter his proposed PO, attached hereto as **Exhibit A.**

I.  **DEFENDANT IS ENTITLED TO PROTECTION AGAINST THE UNDUE INTRUSIVENESS BEING SOUGHT BY PLAINTIFF**

This Court has repeatedly acknowledged the intrusiveness of what Plaintiff is seeking in imaging and searching the entirety of Defendant's hard drives. Further, extensive case law exists

---

[1] During a December 10, 2014 hearing Judge Hegarty also allowed searches for the use of BitTorrent on Defendant's hard drives.

echoing the duty to guard a responding party's privacy interest against undue intrusiveness in allowing direct access to the responding party's electronic information system. *Scotts Co. LLC v. Liberty Mut. Ins. Co*., 2007 U.S. Dist. LEXIS 43005 at *9 (S.D. Ohio June 12, 2007). It is undisputed here that Defendant has a privacy interest in his electronically stored information, including personal correspondence and records, on his computers, smartphones, and other electronic storage devices. *See generally Gateway Logistics, Inc. v. Smay*, 302 P.3d 235, 240-41 (Colo. 2013); *United States v. Andrus*, 483 F.3d 711, 718 (10th Cir. 2007) (personal computer is a repository for private information owner does not intend to share with others; courts must take precautions against infringing on that privacy).

Broad and ambiguous electronic discovery requests may be litigation tactics that results in unlimited "fishing expeditions." *News Am. Mktg. In-Store Servs. v. Floorgraphics, Inc*., 2012 U.S. Dist. LEXIS 76543 at *8-9 (D.N.J. May 30, 2012); s*ee also Bakhit v. Safety Marking, Inc*., 2014 U.S. Dist. LEXIS 86761, at *7-8 (D. Conn. June 26, 2014). To protect against a broad discovery request, a party may move for a protective order to protect the party from annoyance, embarrassment, oppression, or undue burden or expense including forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1). However, the party requesting discovery must show the information requested is not available from other sources, and the party is ***using the least intrusive means*** of obtaining the information. *Gordon v. Rice*, 2014 U.S. Dist. LEXIS 29551, 21-22 (D. Colo. Mar. 7, 2014) (emphasis added). Specific search terms are commonly used in computer forensics requests under a protective order to comply with least intrusive means. In several cases where corporate entities are on both sides of a dispute, courts routinely order the use of search terms to locate

8

relevant information. *See Design Basics, LLC v. Carhart Lumber Co.*, 2014 U.S. Dist. LEXIS 165704 (D. Neb. Nov. 24, 2014); *Cannata v. Wyndham Worldwide Corp.*, 2011 U.S. Dist. LEXIS 133061 (D. Nev. Nov. 17, 2011) (search terms narrowly tailored to particular issues); *Am. Family Mut. Ins. Co. v. Gustafson*, 2009 U.S. Dist. LEXIS 22685 (D. Colo. Mar. 10, 2009). "Search terms" are usually required to be narrowly tailored to particular issues. *Cannata* at \*8. In no event however has any court permitted a party to unilaterally decide how to search, and allow a party to see everything on a computer, as Plaintiff proposes. To permit such search, including unfiltered access to viewing the entirety of the content on one's hard drives, would amount to no protection at all. This is what Plaintiff seeks in its proposed PO.

## II. DEFENDANT'S PROPOSED PO IS REASONABLE AND ADDRESSES THE ALLEGATIONS MADE BY PLAINTIFF

Defendant drafted a proposed PO attempting to follow the Court's direction in the hearings with the following key components:

(1) Defendant proposes the use of keyword searches developed to capture the Works, the removal of the Works, and the use of BitTorrent;

(2) Mr. Paige will identify how and disable all preview functions in his forensic software, in order to avoid viewing the content of the hard drives while he performs the keyword searches;

(3) After performing the agreed upon keyword searches, Mr. Paige will produce a file list of the files containing the results of those keyword searches;

(4) Undersigned counsel will work with Defendant's expert to review the files, and create a privilege/relevance log containing privileged attorney-client communications, work product protected information, private and therefore irrelevant information;[2]

---

[2] Plaintiff claims Defendant's proposal at this step would mean "discovery would never conclude," when in fact, Defendant proposed a reasonable timeframe of 7 business days to provide the log.

(5) All relevant files will be identified so that Mr. Paige will be permitted to view the contents thereof;

(6) Mr. Paige will produce a log of all search activities he performed so that to the extent evidence of the Works, deletion thereof, or BitTorrent use is found, Defendant will be able to duplicate exactly what Mr. Paige did to find such information.

The Court has limited what Plaintiff is permitted to search for, and the above parameters were proposed by Defendant in order to allow Plaintiff to search as permitted, but to prevent the intrusiveness of allowing Plaintiff "open access to all the files on [Defendant's] computer just because there's an allegation of a download." **[Ex. B, 10/14/14 Trans. Excerpt, p. 6]**

### A. Defendant proposes the use of keyword searches developed to capture the Works, the removal of the Works, and the use of BitTorrent.

Defendant retained expert, Robert Kelso of Forensic Pursuit, as a forensic computer expert. **[Ex. L, Affidavit of Robert Kelso]**. Mr. Kelso has participated in hundreds of cases involving the analysis of computerized data for civil and criminal cases, *the vast majority of these cases involving keyword searches.* **[Ex. L, at ¶ 5]**. In Mr. Kelso's experience, keyword searching for an exact title, or agreed variation on an exact title of a Work would provide potential evidence of the presence of the Work on an individual's hard drive. **[Ex. L, at ¶ 13]**. A keyword search could also provide potential evidence of an attempt to remove or delete the Work on the individual's hard drive. **[Ex. L, at ¶ 13]**. Title variations should be agreed upon in advance. **[Ex. L, at ¶ 14]**. Keyword searches with the title of the Work combined with a search terms such as "X-art" or "XArt" should be highly effective in finding the presence of attempted removal of the Works. **[Ex. L, at ¶ 13-14]**. As it is standard protocol in the analysis of computers and other devices for counsel to agree on keyword search terms, this is a reasonable request for the PO. **[Ex. L, at ¶ 14]**. There are no elements of what Plaintiff's analyst would

10

like to get from an analysis of the hard drives that cannot be obtained by well-placed and agreed to keywords, search phrases or very specific registry searches. **[Ex. L, at ¶ 18].**

Plaintiff requests certain improper keyword searches be permitted. Defendant suggested all that is necessary to determine whether Defendant's hard drives contain evidence of BitTorrent use is a search of the term "torrent." Plaintiff refutes this and claims it needs to also search the following in addition to searching for "torrent" "the present or prior existence of a BitTorrent Client or Peer-to-Peer file sharing software (i.e., torrent clients, torrent trackers, torrent bookmarks, torrent files, torrent file fragments, and torrent related web history)." "Searching 'torrent' is common to all the items noted in this paragraph, therefore the keyword "torrent" will be highly effective in finding the current or past existence of torrent-related software." **[Ex. L, at ¶ 15-16]**. No further searching is necessary. Plaintiff has further failed to identify why Mr. Paige needs to go beyond a search for the keyword "torrent."

Another example of a keyword that Plaintiff should not be permitted to search for, is "Malibu Media." While Malibu Media is the Plaintiff in this matter, Malibu Media did not produce these movies. Emails between undersigned and her client certainly contain the terms "Malibu Media" and as such, the search is irrelevant, and this term especially shows the necessity of a file review prior to Mr. Paige reviewing content. Defendant has objected, and Plaintiff can provide no solid reason why searching "Malibu Media" is required.

Plaintiff also proposes broader than necessary searching for the wiping efforts permitted by the Court. **[Ex. L, at ¶ 17].** In a December 9, 2014, Mr. Kotzker provided specific search terms for the wiping efforts as follows:

11

> "window wiper" software, ShredIt, Mac Wipe, WipeDrive. Typically the name includes terms like "wipe" "erase" "clean" "shred" "reformat" "delete" "encypt", so the quoted terms above should cover it.

**[Ex. M, 12/9/14 Email]**. Defendant's PO suggested the following keyword search which incorporated all of what Plaintiff suggested:

> Mr. Paige may type in the following terms to locate wiping efforts: "wipe," "wiping," "erase," "clean," "shred," "reformat," "delete," "Window Wiper," "Evidence Eliminator," "ShredIt," "MacWipe," and "WipeDrive"

**[Ex. A, ¶ 15(e)]**. In the proposed PO, Plaintiff expanded this to include additional language:

> Spoliation or Suppression of Evidence: Plaintiff's forensic expert is permitted to search for evidence of: (1) sophisticated wiping efforts such as the reformatting or wiping of the hard drive; (2) deletions; (3) significant alterations; and (4) the suppression of evidence. This involves the examination of or search for: (1) information about how and when the image was created; (2) the timeline of hard drive usage; (3) the operating system installation information; (4) devices that have been plugged into the hard drive; (5) anti-computer forensic software (software specifically designed to wipe or delete user activity on a hard drive) such as Evidence Eliminator, Window Washer, and other wiping software programs installed on the hard drive; (6) the deleted contents within the unallocated space and recycling bin of the hard drive; and (7) modifications on the hard drive registry.

(Plaintiff's Proposed PO at 16(c)). (1), (2), (3), and (4) above are all covered by the language proposed by Defendant. Allowing the proposed language and not requiring the use of keyword search terms leaves open the possibility that Mr. Paige can search beyond the agreed upon terms and fit them into one of these descriptions. The remainder of the paragraph goes beyond a keyword search, into areas that are beyond the scope of what the Court allowed Plaintiff to search for on Defendant's hard drives. Specifically, (4) devices that have been plugged into the hard drive was raised by Mr. Kotzker on October 14, 2014, and rejected by the Court. Mr. Kelso explains why the proposed keyword searches will actually cover the remainder of the language

contained in Plaintiff's PO.  **[Ex. L, at ¶ 17]**.  The keyword search requirements however ensure that Defendant knows and can track exactly what Plaintiff's expert is doing, and protect Defendant's privacy.

### B. Mr. Paige will identify how and disable all preview functions in his forensic software, in order to avoid viewing the content of the hard drives while he performs the keyword searches.

Plaintiff wants open access to every single bit of personal, confidential, irrelevant information on Defendant's hard drives to perform a fishing expedition.  Without disabling all preview functions to allow counsel to protect those private, confidential, irrelevant information, Plaintiff's expert sees everything, and Defendant has no protection.  **[Ex. L, at ¶ 8]**.

Mr. Kotzker's representation as follows defeats the entire purpose of having a PO in place or trying to protect Defendant from the invasiveness of having to produce his hard drives:

> Patrick Paige is one of the best experts in his field.  He would never reveal any privileged information between you and your client even if it came across his examination…..I can tell you right now that Plaintiff does not care about Defendant's personal social security numbers, banking information, attorney client privileged communication, or snow white videos of Defendant's granddaughter.

Plaintiff would never be permitted to view Defendant's private, personal, financial and irrelevant information in the normal course of discovery, and should be prevented from seeing it here.  Just because this may be a difficult or lengthy process, does not mean all of Defendant's rights should be stripped away.

### C. Production of a file list for privilege and relevancy review, and production of a privilege log protects Defendant from the invasiveness of the fishing expedition being sought

Defendant suggested Mr. Paige use keyword searches, and produce a file list, which will contain specific information in the metadata which will identify files, including many of which the contents are outside of the scope of the Court's order related to the Works, removal of the Works, and BitTorrent use. **[Ex. L, at ¶ 9-11]**. Defendant proposed a reasonable amount of time in which to complete a review of the file list to eliminate those files which contain content which is private, privileged and irrelevant. Providing lists of files to defense counsel that "hit" on well-designed and agreed upon search terms is a standard way of protecting Defendant's privacy. **[Ex. L, at ¶ 19]**.

**D. Mr. Paige will produce a log of all search activities he performed so that to the extent evidence of the Works, deletion thereof, or BitTorrent use is found, Defendant will be able to duplicate exactly what Mr. Paige did to find such information**

During the September 11, 2014 Hearing, a log was specifically discussed by the Court, and as such, should be permitted:

> …he keeps a detailed accounting of every act he engages in. Every keystroke he enters. Okay? So that you can duplicate and follow exactly what he did. And he certifies that under oath. **[Ex. C, 9/11/14 Trans. Excerpt, pp. 12-13]**.

### III.  PLAINTIFF'S REQUEST FOR SANCTIONS SHOULD BE DENIED

Defendant advised the present motions were unnecessary as the parties could simply request a conference with the Court to present their positions and allow the Court to make a determination. Defendant has worked diligently to determine appropriate search parameters for Plaintiff to follow which would accomplish the dual goal of allowing Plaintiff to search for what the Court permits but more importantly protecting Defendant's privacy. Plaintiff's request for fees and costs from Defendant should be denied pursuant to Fed. R. Civ. P. 37(a)(5)(A):

> But the Court must not order this payment [of attorney's fees and expenses] if:

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

Defendant respectfully requests that the Court deny Plaintiff's request for sanctions.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that the Court enter Defendant's Proposed PO, attached as **Exhibit A,** which includes the following items:

(1) keyword searches will be developed by Plaintiff and Defendant in order to capture the Works, the removal of the Works, and the use of BitTorrent;

(2) Mr. Paige will identify how and disable all preview functions in his forensic software, in order to avoid viewing the content of the hard drives while he performs the keyword searches;

(3) after performing the agreed upon keyword searches, Mr. Paige will produce a file list of the files containing the results of those keyword searches;

(4) after creation of a privilege/relevance log by Defendant, Mr. Paige will be permitted to view the contents of the remaining file contents;

(5) Mr. Paige will produce a log of all search activities he performed so that to the extent evidence of the Works, deletion thereof, or BitTorrent use is found, Defendant will be able to duplicate exactly what Mr. Paige did to find such information.

Dated this 9th day of January 2015.

GODIN & BAITY, LLC

By   *s/ Carolyn S. Lindvig*
Carolyn S. Lindvig
621 Seventeenth Street, Suite 1900
Denver, CO 80265
(303)572-3100
clindvig@godinbaity.com

*Attorneys for Defendant Mike Cuddy*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 9th day January 2015 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Jason Kotzker
Kotzker Law Group
9609 South University Boulevard, #632134
Highlands Ranch, CO  80163

*/s/*
_____
Diane T. Lee